UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-00761 MMM (RZx) | Date | April 20, 2010 |

Title   *Brian A. Nicholson v. Federal Express Corp. et al.*

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   Order Dismissing Action with Prejudice for Failure to Follow the Court's Orders and Failure to File Opposition to Motion for Summary Judgment

On August 3, 2009, the court held a case management conference. The court set a further telephonic status conference for January 6, 2010 at 5:30 p.m. and directed that plaintiff's counsel initiate the call with defense counsel and the court on the line. The court also placed the action in the ADR Pilot Program and directed the parties, pursuant to their stipulation, to conduct a mediation before a private mediator no later than March 29, 2010.

On January 6, 2010, plaintiff's counsel failed to appear for the further telephonic status conference. The court issued an order to show cause why the case should not be dismissed for failure to follow court orders. On January 13, 2010, plaintiff's counsel filed a declaration stating that her failure to appear was the result of a calendaring error.

On March 29, 2010, defense counsel filed a status report stating that the parties had scheduled a private mediation for January 22, 2010 that was confirmed by all parties and the mediator on January 20, 2010. On January 21, 2010, plaintiff's counsel sent an email advising the mediator and defense counsel that plaintiff had "decided not to participate" in the mediation. Defense counsel recounted that on January 22, January 27, January 28, February 8, and February 24, 2010, she attempted to contact plaintiff's counsel to reschedule the mediation so as to comply with the court-ordered mediation deadline. As of March 29, plaintiff's counsel had not responded to defense counsel's efforts to contact her. On April 2, 2010, plaintiff filed an unopposed ex parte application seeking to extend the deadline for completion of the mediation to April 16, 2010. The ex parte application stated that plaintiff and defendant had tentatively agreed to conduct a mediation on April

10, 2010 at plaintiff's expense.

On the basis of plaintiff's representation that the parties had agreed on a tentative date for mediation, the court granted the ex parte application. It included the following language in its order granting the ex parte application:

> "The court notes that this is not the first time plaintiff has failed to abide by the court's directives without explanation. The court informs plaintiff that no further extensions will be granted and that failure to abide by the court's directives, including, without limitation, the case management order, or by the local rules for this district may result in dismissal with prejudice without further notice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *Yourish v. California Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999) (holding that the district court did not abuse its discretion in *sua sponte* dismissing a complaint for failure to comply with a court order); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (affirming a lower court's dismissal for failure to follow court orders)."

On April 13, 2010, defendant filed a second status report. The report stated that on April 2, 2010, the date on which the court granted the ex parte application, plaintiff's counsel confirmed in writing that the mediation was set for Friday, April 9, 2010, at 9:30 a.m., a date and time that plaintiff selected. Defense counsel agreed to change preexisting travel arrangements and to take a red-eye flight back to California on the evening of April 8, 2010 to participate in the mediation. After defense counsel had changed her travel plans and rearranged her work schedule, plaintiff's counsel contacted her by email on April 6, 2010, and advised that "[plaintiff] cannot be here on [April 9] for mediation."

On April 16, 2010, defendant filed a third status report. The report states that on Monday, April 12, 2010, plaintiff's counsel sent defense counsel an email, indicating that plaintiff was available to mediate on April 14, 15, or 16, 2010. Defense counsel responded immediately and left two voicemails stating that defendant was willing to mediate on Thursday, April 15, 2010. Defense counsel asked that plaintiff's counsel identify the mediator as well as the time and location of the mediation, noting that plaintiff's counsel had already agreed to make all mediation arrangements and pay for the mediation. Plaintiff's counsel did not respond to either voicemail. Defense counsel sent two more emails requesting the time and location of the mediation. Because plaintiff's counsel was non-communicative, defense counsel contacted the case manager for the agreed-upon mediator, Judge Polis, to determine if plaintiff had reserved time for the mediation. The case manager confirmed that plaintiff had not been in touch with Judge Polis' office, although the case manager had made "numerous" attempts to contact plaintiff's counsel.

By the morning of April 15, 2010, plaintiff's counsel still had not responded to defense counsel's inquiries. Defense counsel again contacted Judge Polis's case manager, who confirmed that plaintiff's counsel had likewise not contacted her. At 9:19 a.m., after several days of silence,

plaintiff's counsel emailed defense counsel, stating: "My client just came into town. We want to mediate. You just tell me when. Thanks." Defendant's counsel responded to this email shortly thereafter and offered to mediate on April 16, 2010. At 3:36 p.m., plaintiff's counsel sent defense counsel an email, ignoring the offer to mediate before the court-imposed deadline, and asking to mediate over the weekend on April 17 or 18, 2010. Defense counsel responded at 5:25 p.m. that she was not available over the weekend due to previously scheduled obligations and that, in any event, the deadline for completion of a mediation was April 16, 2010. Plaintiff's counsel did not respond to this email. Instead, she left a voicemail for defense counsel mid-morning on April 16, 2010, asking for information regarding the status of the mediation. At 11:43 a.m., defense counsel responded via email that she had alrelady indicated that she was unavailable over the weekend and that the court's deadline was April 16.

Both defense counsel's second and third status reports indicate other concerns with plaintiff's counsel's conduct in this case. On March 15, 2010, defendant filed a motion for summary judgment or in the alternative, partial summary adjudication. Under Local Rule 7-9, the deadline for filing opposition was Monday, April 12, 2010. Defendant alerted the court and plaintiff to this omission in its April 13, 2010 status report. Despite the fact that defendant put plaintiff on notice that opposition to the motion for summary judgment was overdue, plaintiff has neither filed opposition nor an ex parte application seeking to explain the omission or seeking leave to file late opposition.

In her third status report, defense counsel states that defendant served requests for admission on plaintiff on March 11, 2010 by overnight mail. As a consequence, responses were due on April 12, 2010. As of the April 16, 2010 status report, plaintiff had not served responses or requested an extension.

Rule 41(b) permits courts to dismiss an action *sua sponte* for failure to comply with a court order. See, e.g., *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629-31 (1962) ("The authority of a court to dismiss sua sponte . . . has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs. . . . It would require a much clearer expression of purpose than Rule 41(b) provides for us to assume that it was intended to abrogate so well-acknowledged a proposition"); *Yourish v. California Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999) (holding that the district court did not abuse its discretion in *sua sponte* dismissing a complaint for failure to comply with a court order); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (affirming a lower court's dismissal for failure to follow court orders).

"In determining whether to dismiss a claim for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). With respect to the first factor, "[t]he public's interest in expeditious resolution of litigation always favors dismissal." *Id.* (quoting *Yourish*, 191 F.3d at 990). With respect to the last factor

"[p]ublic policy favors disposition of cases on the merits," and thus this factor always "weighs against dismissal." *Id.* at 643.

It appears from defendant's filings that defendant has been prejudiced by plaintiff's failure to follow the case management order and subsequent amendments thereof. In particular, defendant scheduled, and prepared to attend, a January mediation that plaintiff canceled on one day's notice. Defense counsel substantially rearranged her schedule and took a red-eye flight back to California to attend an April 9, 2010 mediation, which was also cancelled. Defense counsel expended significant effort attempting to encourage plaintiff's counsel to comply with the court's mediation cut-off schedule, or at a minimum, to respond to emails and voicemails. Defense counsel took it upon herself to contact the mediator to see if plaintiff's counsel had scheduled a mediation without notifying defendant.

Additionally, were plaintiff now belatedly to file opposition to the motion for summary judgment, the court could not prepare for and hear the motion on the scheduled date of May 3, 2010. Given the court's congested calendar, it is unlikely that the motion could be heard before late June. Such a delay would require rescheduling the trial in this matter and delay resolution by at least several months. Plaintiff's refusal to respond to requests for admission may, in any event, have resulted in a concession that defendant is not liable on plaintiff's claims; at a minimum, the failure will most likely result in additional motion practice by plaintiff to set aside the admissions. This will require further expenditures on defendant's part.

Courts have "related the risk of prejudice to plaintiff's reason" for failure to follow court orders. *Pagtalunan*, 291 F.3d at 642. Based on defendant's filings, plaintiff's repeated failure to follow court orders does not appear to have been result of excusable neglect or inadvertent error. The parties, in an effort to comply with the court's order, scheduled a January mediation, which plaintiff canceled on short notice without offering any justification. Defense counsel dutifully attempted to reschedule the mediation, reminding plaintiff's counsel of the need to conduct a mediation before April 16 on five separate occasions. Even after the court's admonition on April 2, 2010 that the case might be dismissed without notice if there were further failures to follow court orders, plaintiff's counsel once again canceled a scheduled mediation on short notice. Even after this point, plaintiff's counsel was not diligent; instead, she was incommunicado for extended periods of time as the extended mediation deadline approached. The court requires that parties participate in alternative dispute resolution for a reason; because the expeditious and efficient resolution of claims mandates that parties at least attempt to settle matters without unnecessary expenditure of court or party resources or extensive discovery and motion practice. Failure to participate in mediation has prejudiced defendant in that defendant has been denied the chance to settle the case without accruing increasing attorneys' fees and costs. Since canceling the first mediation, defense counsel has filed a substantial motion for summary judgment, accompanied by hundreds of pages of exhibits. Her client presumably incurred considerable expense as a result. For all of these reasons, defendant has been prejudiced by plaintiff's dilatory tactics and failure to comply with the case management order and Local Rules. Consequently, this factor weighs heavily in favor of dismissal.

"The trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." *Pagtalunan*, 291 F.3d at 642. Time spent attempting to participate in a further telephonic status conference, and responding to the legitimate concerns of defense counsel when plaintiff fails to comply with court orders, "has consumed some of the court's time that could have been devoted to other cases on the docket. It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants." *Id.* The court's review of multiple status reports outlining the failures of plaintiff to undertake mandated litigation activity has consumed the court's time and energy. Moreover, if excused, plaintiff's failure to file opposition to the motion for summary judgment would require a wholesale rescheduling of the case management dates and delay resolution of the action by several months. Consequently, this factor weighs heavily in favor of dismissal. See also *Yourish*, 191 F.3d at 991 ("Because the district judge was in a superior position to evaluate the effects of delay on [its] docket, we find that this factor strongly favors dismissal").

The Ninth Circuit in *Pagtalunan* emphasized that it is incumbent upon the district court to "consider less drastic alternatives after [plaintiff has] failed to comply with the court's order." *Pagtalunan*, 291 F.3d at 643. On the present record, and given the court's experience with plaintiff's counsel, the court is aware of no less drastic alternative that would result in plaintiff's compliance with the case management order. The April 2, 2010 order was not the first time that the court threatened dismissal if plaintiff failed to comply with its orders. In addition, defense counsel has reminded plaintiff's counsel of her obligation to comply with the case management order regarding mediation on *five separate occasions after* plaintiff's counsel abruptly canceled a scheduled mediation. Plaintiff also incurred a de facto financial penalty as a result of at least one of the cancellations, inasmuch as plaintiff agreed to pay all mediation costs. The court's April 2, 2010 order warned plaintiff that further failures to comply with the scheduling order would result in dismissal with prejudice without further notice. Given that lesser sanctions and warnings have had no effect, the court cannot envision a less drastic alternative that will persuade plaintiff to litigate the case with diligence and comply with court orders. Consequently, this factor too weighs heavily in favor of dismissal.

The court notes, moreover, that plaintiff's counsel was on notice that a failure to file opposition to the motion for summary judgment could result in the granting of that motion and dismissal of the action with prejudice. Local Rule 7-12 provides that "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." CA CD L.R. 7-12. See *Cortez v. Hubbard*, No. CV 07-4556-GHK (MAN), 2008 WL 2156733, *1 (C.D. Cal. May 18, 2008) ("Petitioner has not filed an [o]pposition to the [m]otion and has not requested any further extension of time to do so. Pursuant to Local Rule 7-12, his failure to do so could be deemed to be consent to a grant of the [m]otion"); *Mack-University LLC v. Halstead*, No. SA CV 07-393 DOC (ANx), 2007 WL 4458823, *4 n. 4 (C.D. Cal. Sept. 25, 2007) (where a party "failed to oppose or in any way respond" to a motion, the court held that "[p]ursuant

to local Rule 7-12, the [c]ourt could grant [p]laintiffs' [m]otion on this ground alone"); *Ferrin v. Bias*, No. ED CV 02-535 RT (SGLx), 2003 WL 25588274, *1 n.1 (C.D. Cal. Jan. 2, 2003) ("Under Local Rule 7-12, failure to file an opposition may be deemed consent to the granting of the motion").

When a party violates a local rule that causes the district court not to consider its opposition, the court may not enter summary judgment solely on that basis, but must independently consider whether there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir.1995); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir.1993) Summary judgment is proper unless "the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact." *Henry*, 983 F.2d at 949. In evaluating discrimination claims under FEHA, California courts look to federal precedent governing analogous federal discrimination laws. See *Guz v. Bechtel National*, 24 Cal.4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes. . . . In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment" (citations omitted)); *Caldwell v. Paramount Unified School District*, 41 Cal.App.4th 189, 195 (1995); *Mixon v. FEHC*, 192 Cal.App.3d 1306, 1317 (1987).[1]

Accordingly, a FEHA plaintiff may establish a *prima facie* case of discrimination either by adducing direct evidence of discriminatory intent, or by satisfying his burden under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004) ("For a *prima facie* case, Vasquez must offer evidence that 'give[s] rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent"); *Guz*, 24 Cal.4th at 354 ("This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially").[2]

---

[1]FEHA prohibits employers from discriminating against employees on certain enumerated grounds, including on the basis of physical disability. CAL. GOV'T. CODE § 12940(a). In relevant part, the statute defines "physical disability" as "having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that . . . affects . . . the neurological [system] [and] . . . limits a major life activity . . . ." CAL. GOV'T. CODE § 12926(k)(1); see generally *Cassista v. Community Foods, Inc.*, 5 Cal.4th 1050, 1143-61 (1993) (providing a detailed overview of law of "physical handicap"/"physical disability" discrimination in California).

[2]See also, e.g., *Cordova v. State Farm Insurance Companies*, 124 F.3d 1145, 1148 (9th Cir. 1997) ("To establish a prima facie case, a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.' . . . 'The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas* . . . , or by more direct evidence of discriminatory intent'"); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) ("The prima facie case may be based either on a presumption arising from the factors such as

Where a plaintiff relies on circumstantial, as opposed to direct, evidence of discriminatory intent, a burden-shifting analysis applies. In *McDonnell Douglas*, the Supreme Court held that the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. "The *prima facie* case, once established, results in a 'presumption that the [defendant] unlawfully discriminated against the [plaintiff].'" *Lessard v. Applied Risk Management*, 307 F.3d 1020, 1025 (9th Cir. 2002) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action being challenged. Assuming the defendant carries this burden, plaintiff must then demonstrate that the defendant's asserted reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802, 804; see also *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *Burdine*, 450 U.S. at 252-53.

On the present record, it is undisputed that prior to plaintiff's termination, FedEx disciplined him on three separate instances. FedEx disciplined him on June 20, 2007, when plaintiff admitted that he was late to work on all documented dates and that his punctuality percentage had fallen below a pre-established permissible rate. FedEx disciplined plaintiff again on August 30, 2007, after an internal investigation revealed that a security video depicted, and five witnesses confirmed that plaintiff threaten to kill a co-worker and charged at her, intending to attack her, until physically restrained by another co-worker. FedEx disciplined plaintiff a third time on December 26, 2007 after plaintiff dropped a container weighing thousands of pounds and failed to report the incident to his manager. It is undisputed on the present record that FedEx terminates employees who receive three warnings of the sort given plaintiff within twelve months; that plaintiff admitted that he does not know of any non-disabled employees who were treated differently; and that FedEx has adduced evidence of similarly situated non-disabled employees who were given warnings under similar circumstances, i.e, for tardiness violating company guidelines, for dropping containers, and for abusive language directed at co-workers. Plaintiff has proffered no direct or circumstantial evidence that he was terminated because he suffers from Tourette's Syndrome. As a consequence, plaintiff has not established a prima facie case of discrimination. Consequently, under Local Rule 7-12 and *Henry*, 983 F.2d at 950, it is appropriate to dismiss the action with prejudice due to plaintiff's failure to file timely opposition to defendant's motion for summary judgment.[3]

Having reviewed the factors relevant in evaluating whether dismissal for failure to comply with

---

those set forth in *McDonnell Douglas Corp*. . . . or by more direct evidence of discriminatory intent").

[3]Plaintiff's second claim for relief, which alleges wrongful termination in violation of public policy, falls as well. Under California law, where a statutory discrimination claim fails as a matter of law, a companion wrongful termination in violation of public policy claim fails as well. See *Avila v. Continental Airlines, Inc.*, 165 Cal.App.4th 1237 (2008) (affirming the trial court's grant of summary judgment on plaintiff's claim of wrongful termination in violation of public policy upon finding that the underlying FEHA discrimination claim failed as a matter of law).

7

court orders and Local Rules is appropriate, the court concludes that four of the five weigh in favor of dismissal. Specifically, the public's interest in expeditious resolution of litigation, the court's need to manage its docket, the risk of prejudice to defendants, and the availability of less drastic alternatives each weigh in favor of dismissal; of these, the latter three weigh heavily in favor of dismissal. The only factor weighing against dismissal – the public policy favoring disposition of cases on their merits – weighs against dismissal in all cases. In this case, since plaintiff has failed to oppose defendant's motion for summary judgment, the court has conducted some review of the merits of that motion, and plaintiff, by virtue of failing to oppose, has not established a prima facie case of discrimination, the court concludes that this factor does not weigh heavily against dismissal. Moreover, as an independent basis for dismissal, plaintiff has not opposed defendant's motion for summary judgment and the court's review of the motion and the underlying facts reveals no genuine issue of triable fact as to whether plaintiff has established a prima facie case of discrimination. As a consequence, the court, pursuant to the authority granted by Rule 41 of the Federal Rules of Civil Procedure and Local Rule 7-12, dismisses plaintiff's action with prejudice.